

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMN:AH
F. #2015R00747

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 18, 2016

By Hand and ECF

The Honorable Pamela K. Chen
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Aaron Davidson
                  Criminal Docket No. 15-252 (S-1) (PKC)

Dear Judge Chen:

       The government respectfully submits this letter to notify the Court of a potential conflict of interest involving one of the defendant Aaron Davidson's attorneys in the above-captioned case. The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).

       The government respectfully requests that the Curcio hearing be conducted on October 20, 2016 at 1 p.m., just before the change of plea hearing that the parties previously scheduled for the same date and time. Because the potential conflict only implicates an attorney with one of the two firms representing the defendant, and the government is advised that the defendant has already had an opportunity to consult with unconflicted counsel and intends to waive the potential conflict, the government respectfully suggests that it will be appropriate for the Court to conduct the Curcio and change of plea hearings in the same proceeding.

BACKGROUND

I.      The Superseding Indictment

       The defendant was arrested May 27, 2015 in Florida based on an arrest warrant that had been issued in connection with the original indictment in this case. The defendant, a former sports marketing executive, was charged in the original indictment and the superseding indictment returned last November with racketeering conspiracy and other crimes in connection with his alleged participation in a multi-year scheme to corrupt international soccer through the payment of bribes and kickbacks. As alleged in the superseding indictment, the defendant was a

high-level executive, including the president, of Traffic Sports USA, Inc. ("Traffic USA"), where he began working in 2003. Traffic USA was a Florida corporation that had its headquarters and principal place of business in Miami, Florida and was involved principally in the purchase and sale of media and marketing rights associated with soccer in the United States and other parts of the Confederation of North, Central American and Caribbean Association Football (CONCACAF) region. Traffic USA was part of the Traffic Group, a multinational sports marketing conglomerate based in Brazil.[1]

As part of the racketeering conspiracy with which he is charged, the defendant is alleged to have personally participated in bribery schemes involving three specific soccer tournaments: the Caribbean Football Union (CFU) World Cup Qualifiers Scheme #2 (Scheme M in Section VI of the superseding indictment); the CONCACAF Gold Cup/Champions League Scheme (Scheme N); and the jointly-organized Confederación Sudamericana de Fútbol (CONMEBOL)/CONCACAF Copa América Centenario Scheme (Scheme O). A number of other schemes that the defendant is not alleged to have personally participated in are also alleged as part of the racketeering conspiracy, including two schemes relating to a South American club team tournament: CONMEBOL Copa Libertadores Scheme #1 (Scheme C) and CONMEBOL Copa Libertadores Scheme #2 (Scheme D).

II.     Potential Conflict

The defendant is represented by Abbe Lowell, Esq. and Jenny Kramer, Esq., both of the law firm Chadbourne & Parke, LLP, as well as by Lee Vartan, Esq. of Holland & Knight. The potential conflict arises from Mr. Lowell and his firm's (together "C&P's") representation of a soccer-focused cable television network ("Client"). Mr. Lowell has advised the government that Client may have civil claims against CONMEBOL related to Client's failed efforts to purchase media rights to the Copa Libertadores related in part to the conduct alleged in the superseding indictment regarding the tournament and certain CONMEBOL officials. It is also possible that Client could be a witness to events at issue in the indicted case. The defendant and Client did not have any dealings with each other. Although the defendant and his former employer, Traffic USA, are not alleged to have been involved in the Copa Libertadores schemes alleged in the superseding indictment, the Traffic Group did have some involvement with the Copa Libertadores. For example, an affiliated entity of the Traffic Group was an investor in the entity that acquired the media rights associated with the Copa Libertadores and also purchased certain broadcast rights for the tournament. Moreover, the defendant is alleged to have conspired with many of the same CONMEBOL officials alleged to have participated in the Copa Libertadores schemes.

Mr. Vartan, who also represents the defendant, does not have any potential conflicts.

---

[1] On May 14, 2015, Traffic USA and Traffic Sports International, Inc., ("Traffic International") an associated entity of Traffic Group, pled guilty to wire fraud conspiracy.

DISCUSSION

I.   Applicable Law

    A.   Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

        1.   Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). The Second Circuit has held that only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes. See, e.g., United States v. Novak, 903 F.2d 883, 890 (2d Cir. 1990); United States v. Williams, 372 F.3d 96, 105 (2d Cir. 2004) (finding unwaivable conflict of interest where counsel unlawfully exchanged firearms with defendant indicted for using firearms in furtherance of his criminal activities).

        2.   Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of

3

the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 3. Dual Representation

An attorney has a potential conflict of interest "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998). Where an attorney has represented (or currently represents) an individual who could be a witness in the current client's criminal matter, such as a government witness or an unindicted co-conspirator, such representation presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Ioizzo, 786 F.2d 52, 57 (2d Cir. 1986). Conflicts of interest of this nature have generally arisen in the context of past, rather than current, representation, but the principle remains the same—a lawyer owes an absolute duty of loyalty and confidentiality to his clients, current and former. A lawyer representing one client cannot, for example, use privileged information obtained from one client in a way that would negatively affect the other client. For example, an attorney cannot use information obtained from one client to attack his other client through cross-examination or argument to the jury. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently"). Likewise, a conflict may arise if one client wished to cooperate with the government's investigation and testify as to facts inculpating the other client.

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts of this type. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). For example, the Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

### 4. Waiver Procedure

4

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., United States v. Malpiedi, 62 F.3d 465, 470 (2d Cir. 1995); Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." United States v. Stantini, 85 F.3d 9, 15 (2d Cir. 1996). Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

II.     The Potential Conflict and Proposed Inquiry

As noted above, the source of the potential conflict presented in this case arises from C&P's dual representation of the defendant and Client. As stated above, although the defendant is not alleged to have been involved in the charged schemes concerning the Copa Libertadores, he was a high level executive at Traffic USA, an affiliated entity of Traffic Group, which, through Traffic International, did have involvement with that tournament. Moreover, the defendant is alleged to have conspired with many of the same CONMEBOL officials who are alleged to have participated in the Copa Libertadores schemes. While there is no precise overlap in subject matter, the subject of C&P's representation of Client is somewhat related to the subject of his representation of the defendant.

Accordingly, the government respectfully requests that the Court advise the defendant regarding the conflict and inquire as to whether he has had sufficient opportunity to consult with Mr. Vartan regarding the potential conflict. In the event the Court determines that

5

the defendant can waive the potential conflict of interest, the government proposes that the Court advise the defendant as follows:

> Generally speaking, you have the right to be represented by the attorney of your choice, and I have every reason to believe that Mr. Lowell, who has been a member of the bar and practiced in federal court for many years, is capable of adequately representing you. You may continue to have Mr. Lowell and his law firm represent you if you so desire but there are some risks for you in proceeding with C&P, and I must ask you a series of questions to assure myself that you understand the risks and still want to proceed with C&P as one of your counsel.
>
> It is possible that an attorney at C&P could make decisions in connection with his or her representation of you, consciously or unconsciously, with an eye to how such decisions might affect C&P's representation of Client, to which the firm owes a continuing duty of loyalty. For example, C&P's attorneys might be prevented from investigating leads, introducing evidence or making arguments on your behalf that might tend to cast suspicion on its other client. C&P also may not be able to provide you with a completely independent assessment of whether you should pursue cooperation with the government.
>
> Attorneys at C&P may have privileged information from Client that could assist you but that he cannot disclose to you because of their ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crimes with which you are charged, whereas C&P may be ethically barred from pursuing such a strategy due to contrary information he may have obtained from Client.
>
> It is possible that, were you to proceed to trial, someone employed by or associated with Client could be a witness at trial. In that situation, C&P might be prohibited from cross examining that witness about certain topics or even cross examining the witness at all.
>
> There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact that he also represents Client. No one can foresee every possible conflict of interest.
>
> Do you have any questions about what I have just explained to you?
>
> Can you tell me in your own words what you understand the potential conflict of interest to be?
>
> You have the right to be represented by an attorney who does not have any possible conflict of interest in representing you at all stages of this case,

including any plea negotiations.  If you proceed with C&P as one of your attorneys, you will be giving up that right.  Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflict of interest that might arise if you proceed with C&P as your attorney.  Do you understand that?

In this case, I understand that you are also represented by Mr. Vartan of the law firm Holland & Knight, who is not affiliated with C&P.  I also understand that you have consulted with Mr. Vartan about this issue.  If you need more time to consult with Mr. Vartan about this issue, you may do so.  You are not under any pressure to make a decision about this right now.  You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.  Do you feel you have had enough time to consult with Mr. Vartan and are you comfortable making a decision now?

Finally, your ability to afford an attorney should play no role in your decision here.  If you decide that you do not want to have C&P represent you, or you decide that you want to consult with another attorney before you make this decision, and you cannot afford to retain another attorney, the court will appoint an attorney for you free of charge.  Do you understand that?

Are you willing to give up the rights that I described to have counsel free of any conflict so that you can proceed with C&P as your counsel?

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court notify the defendant of the potential conflict raised above and conduct an appropriate inquiry pursuant to Curcio. The government further respectfully requests that the Court advise the defendant regarding his right to conflict-free representation and determine if he wishes to waive that right.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   /s/
Amanda Hector
Assistant U.S. Attorney
(718) 254-6212

cc:   Clerk of Court (PKC) (by ECF)
Abbe Lowell, Esq. and Jenny Kramer, Esq. of Chadbourne & Park (by ECF)
Lee Vartan, Esq., of Holland & Knight LLP (by ECF)